**No. 79SA275**

**In the Matter of the Application for Water Rights of James E. Bubb and Richard E. Yeager and James E. Bubb and Richard E. Yeager v. Vernon C. Christensen and Estella D. Christensen**

(610 P.2d 1343)

Decided May 19, 1980.

22

Vance E. Halvorson for appellees.

Robert H. Gleason for appellants.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

James E. Bubb (Bubb) and Richard E. Yeager (Yeager) filed an application in the water court[1] for Water Division No. 6 to make absolute their conditional water right for Yeager & Bubb Spring No. 1. The point of diversion of that conditional water right is on a lot owned by Vernon C. Christensen and Estella D. Christensen (Christensens). Bubb and Yeager later filed a complaint in the district court for Routt County, seeking a declaration that they own an easement for water diversion and transportation facilities across the Christensens' lot for the purpose of developing and utilizing Yeager & Bubb Spring No. 1, and other relief. The two cases were consolidated for trial before the water judge, who granted the application to make the conditional water right absolute and recognized a right in Bubb and Yeager to proceed in eminent domain to condemn the easement. The Christensens appealed,[2] and we affirm.

The cases were submitted and decided on stipulated facts.

James E. Bubb and Doria Bubb own Lot 12, Elk River Estates, Filing No. 3, in Routt County. Richard E. Yeager and Eliza Yeager own Lot 11 in that subdivision. There is a residence on each of those lots. The Bubbs and the Yeagers were unsuccessful in efforts to obtain an adequate supply of water for residential use by wells drilled on their own lots.[3] There are no known water sources on those lots.

On October 5, 1973, Bubb and Yeager filed an application in the water court for a conditional water right for domestic, irrigation, and stock watering purposes in the amount of .01 cubic feet per second (cfs) from unnamed springs. The point of diversion was described by reference to a United States government survey corner. The description placed the point of diversion within Lot 5, Elk River Estates, Filing No. 3, although no reference to that lot or subdivision was contained in the description. Lot 5 is owned by the Christensens. A summary of the application was

---

[1] We use "water court" as a convenient way to describe the district courts of all counties situated entirely or partly within the water division, collectively acting through the water judge. *See* section 37-92-203(1), C.R.S. 1973.

[2] Bubb and Yeager cross-appealed, contending that the water judge should have held that they have an easement over the Christensens' property by operation of law. However, Bubb and Yeager have requested that their cross-appeal be considered only if the order of the water judge is reversed in whole or in part based upon the Christensens' appeal. As we are affirming the order of the water judge, it is unnecessary to consider the cross-appeal.

[3] James E. Bubb caused two wells and three test holes to be dug on the Bubb lot. The Yeagers' predecessor in ownership caused one well to be dug on their lot. The sum of $27,000 was spent in these unsuccessful efforts to obtain water for domestic use.

duly published as part of the resume of water applications, as required by law.[4]  The Christensens filed no statement of opposition.[5]  On February 28, 1974, the water referee granted a conditional water right for "Yeager & Bubb Spring No. 1" in the amount of .01 cfs with a priority date of September 12, 1973. On April 16, 1974, the water judge for Water Division No. 6 approved and adopted that ruling and made it a decree of the water court. The springs are tributary to the Yampa River.

About October 1975, Bubb and Yeager installed necessary drain tile, pipe, and other improvements on Lot 5 to develop Yeager & Bubb Spring No. 1 and to transport water therefrom to their own property. .01 cfs was first applied to beneficial use on Lots 11 and 12 on or about November 6, 1975. Bubb and Yeager neither requested nor received permission from the Christensens to enter Lot 5. The lot was not posted against trespass and was not fenced or enclosed. On April 9, 1976, Bubb and Yeager filed an application in the water court to have the conditional water right declared absolute.

The Christensens resided outside the state of Colorado and had no actual knowledge of the entry of Bubb and Yeager upon Lot 5 or the construction of the water diversion and transportation facilities until approximately June 1976. Upon learning of the activity on their property, the Christensens promptly filed a statement of opposition to the application of Bubb and Yeager to have the conditional right made absolute, and threatened to cut off the water supply by destroying or dismantling the improvements.

In response to that threat, Bubb and Yeager commenced an action in Routt County District Court in which they requested temporary and permanent injunctions to prevent the Christensens from interfering with the water supply facilities, and in which they sought a declaration that Bubb and Yeager owned an easement across Lot 5 for their water diversion and transportation facilities. In the alternative, Bubb and Yeager sought a right to condemn such easement through eminent domain proceedings. The district court entered a temporary restraining order against the Christensens on August 18, 1977, and that order has been continued in effect by agreement pending determination of the legal issues on the merits of both cases.

The application to have the conditional water right declared absolute and the application for injunctive relief were consolidated for trial before the water judge.[6]  An order resolving the matters in dispute was issued February

---

[4] Section 37-92-302(3)(b), C.R.S. 1973 (1979 Supp.).

[5] See section 37-92-302(1)(b), C.R.S. 1973 (1979 Supp.).

[6] The water judge specifically ruled that it was appropriate to consolidate the proceedings in the district court with the application in the water court, because the former proceedings involved findings ultimately affecting water matters. This ruling has not been challenged on appeal and appears proper.

15, 1979. The water judge held that a water right can be initiated by trepass[7] and that, in any event, the Christensens cannot attack the conditional decree because they failed to appear and object in the proceedings in which the conditional decree was issued. The water judge also held that trespass is not a proper issue in a proceeding to make absolute a conditional water right. The following relief was granted: (1) the conditional water right for Yeager & Bubb Spring No. 1 was made absolute; (2) a preliminary injunction was issued against the Christensens, prohibiting interference with use of the easement by Bubb and Yeager, and prohibiting removal or destruction of the water diversion and transportation facilities; (3) Bubb and Yeager were permitted to proceed in eminent domain to condemn an easement for water diversion and transportation facilities; (4) Bubb and Yeager were granted a right of immediate possession incident to the condemnation;[8] and (5) the order was made final with respect to the relief described in (1) and (3) above, pursuant to C.R.C.P 54(b). This appeal followed.

The Christensens assert that the water court's order should be reversed on two grounds: (1) a water right cannot be initiated or perfected by trespass against the persons upon whose land the trespass was committed, and (2) the facility constructed by Bubb and Yeager is a well, not a spring, and no power of condemnation exists in Bubb and Yeager to acquire an easement for water diversion and transportation facilities relating to a well.

## I.

We first consider whether the conditional water right can be attacked at this time on the basis that it was *initiated* by trespass.

An application for a conditional water right involves a "water matter" over which the water court has exclusive jurisdiction. Section 37-92-203(1), C.R.S. 1973; section 37-92-302, C.R.S. 1973 (1979 Supp,). The stipulated facts establish that the conditional water right decreed to Yeager & Bubb Spring No. 1 was obtained in full compliance with the procedures prescribed by section 37-92-302, C.R.S. 1973 (1979 Supp.). The Christensens had notice of the application by reason of publication of the summary in the resume. *See* section 37-92-302(3)(a), C.R.S. 1973. The Christensens did not file a statement of opposition to the application,

---

[7] The specific activities which occurred on the land to initiate the conditional water right are not identified by the stipulated facts. It is assumed that Bubb and Yeager actually went upon the Christensens' land before applying for the conditional water right, because of the necessity of activity on the land to satisfy the "first step" requirement to initiate a conditional water right. *See Elk -Rifle Water Co. v Templeton*, 173 Colo. 438, 484 P.2d 1211 (1971).

[8] Moneys representing the value of the property taken plus damage to the residue had been deposited into the registry of the court. *See* section 38-1-105(6), C.R.S. 1973.

section 37-92-302(1)(b), C.R.S. 1973 (1979 Supp.); did not file a protest to the ruling of the referee, section 37-92-304(2), C.R.S. 1973; and did not seek correction of any substantive errors in the judgment and decree of the water court within three years after it was entered, section 37-92-304(10), C.R.S. 1973. Instead, they took no action until the water had been applied to beneficial use and an application had been filed to make the conditional decree absolute. They then filed a statement of opposition.

We do not reach the question whether trespass is a defense to an application for a conditional water right[9] No such defense was raised, and the time for challenging the conditional decree has expired. The Christensens are bound by the conditional decree for Yeager & Bubb Spring No. 1.

## II.

The Christensens also contend that a water right cannot be *perfected* by trespass against the person upon whose land the trespass was committed.

In the instant case the improvements which permitted the water to be diverted and applied to beneficial use were constructed after entry of the conditional decree and without permission of the Christensens. As will be seen in Part III of this opinion, the owner of a conditional water right may condemn rights-of-way over the lands of others for the purpose of transporting water for beneficial use. *See* section 37-86-102, C.R.S. 1973. Bubb and Yeager did not do this. Instead, they entered on the Christensens' land peacefully but without permission, constructed the facilities without interference or complaint by the Christensens, and applied the water to beneficial use.

Any damages resulting from the taking of the Christensen's property and damage to the residue can be compensated in the pending eminent domain proceeding. *See* sections 38-1-101 to -120, C.R.S. 1973 (1979 Supp.). This is the only relief to which the Christensens would have been entitled had the eminent domain proceedings been conducted in advance of entry on Lot 5 by Bubb and Yeager. Any other damages resulting from Bubb and Yeager's unpermitted entry on Lot 5 could be recovered in an action based on trespass.[10]

No useful purpose would be served by holding that the conditional water right cannot be decreed to be absolute until the easement has been obtained by condemnation. In other cases in which a person having a right of eminent domain entered upon land without authorization prior to

---

[9] For convenience, we adopt the "trespass" characterization used by the parties. By so doing we do not intend to foreclose the possibility that entry upon the land of another to take the first step to initiate a water right might be deemed permitted by operation of law in some circumstances. We need not reach that issue in this case and express no opinion with respect to it.
[10] *But see* footnote 9.

exercise of such right, the landowner has been denied permanent injunctive relief. *Twin Lakes Co. v. Sill,* 104 Colo. 215, 89 P.2d 1012 (1939) (injunction denied on condition that eminent domain proceedings be instituted and diligently prosecuted); *see Stuart v. Colorado Easter Railroad Co.,* 61 Colo. 58, 156 P. 152 (1916) (relief will be limited to monetary recovery for the value of the land taken and the damages caused by the taking); *Larimer County Canal No. 2 Irrigating Co. v. Larimer and Weld Reservoir Co.,* 26 Colo. App. 380, 143 P. 270 (1914) (injunction may be conditionally granted until compensation is paid or condemnation proceedings instituted). Under the circumstances of this case we conclude that trespass is not a defense to the application to make the conditional water right absolute.

III.

The Christensens urge that the structure constructed on their land by Bubb and Yeager is a well, not a spring, and that the law does not permit condemnation of an easement to construct a well upon the land of another and to transport water from the well to apply it to beneficial use on other lands.

The record reflects that the source of the water was stated in the original application to be "unnamed springs." The water referee found the statement to be true in issuing his ruling, and the ruling was confirmed and made a judgment and decree of court. This establishes the source of the water to be springs.

Even more importantly, the right of condemnation is not dependent upon whether the source of supply is characterized as a well or a spring. The statutory basis for the right is section 37-86-102, C.R.S. 1973, which provides:

"Any person owning a water right or conditional water right shall be entitled to a right-of-way through the land which lies between the point of diversion and point of use or proposed use for the purpose of transporting water for beneficial use in accordance with said water right or conditional water right."

The extent of the right-of-way is defined by section 37-86-103, C.R.S. 1973, and the right of condemnation to acquire the right-of-way is granted by section 37-86-104, C.R.S. 1973.[11]

When a facility for transportation of water is constructed or utilized by one having the right of eminent domain, without prior acquisition of an easement, the remedy of the landowner is limited to temporary relief pending conduct of the eminent domain proceedings by owners of the water right. *Twin Lakes Co. v. Sill, supra; see Stewart v. Stevens,* 10

---

[11] The ultimate sources of the right of condemnation are *Colo. Const.* art. II, § 14, and *Colo. Const.* art. XVI, § 7.

Colo. 440, 15 P. 786 (1887); *Larimer County Canal No. 2 Irrigating Co. v. Larimer and Weld Reservoir Co., supra.*

The order of the water judge from which appeal has been taken is fully consistent with the views expressed in this opinion. We affirm that order.